NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
KATHARINE SCHONBACHLER
California Bar No. 222875
Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3172
    Facsimile: (213) 894-0142
    E-mail: Katie.Schonbachler@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:18-CV-04420 |
| Plaintiff, | VERIFIED COMPLAINT FOR FORFEITURE |
| v. | [19 U.S.C. § 1595a(c)(1)(A)] |
| ONE ANCIENT MOSAIC, | [F.B.I.] |
| Defendant. | |

The United States of America brings this claim against the defendant One Ancient Mosaic, and alleges as follows:

### JURISDICTION AND VENUE

1.     This is a civil forfeiture action brought pursuant to 19 U.S.C. § 1595a(c)(1)(A).

///

2.      This court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3.      Venue lies in this District pursuant to 28 U.S.C. § 1395(a).

## PERSONS AND ENTITIES

4.      The plaintiff is the United States of America.

5.      The defendant is One Ancient Mosaic (the "defendant mosaic") that the Federal Bureau of Investigation ("FBI") seized on March 19, 2016, during the execution of a federal search and seizure warrant at the residence of Mohamad Yassin Alcharihi in Palmdale, California.[1]

6.      The defendant mosaic is currently in the custody of the FBI, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7.      The interests of Mohamad Yassin Alcharihi may be adversely affected by these proceedings.

## APPLICABLE FORFEITURE STATUTES

8.      Plaintiff alleges that the defendant mosaic is subject to forfeiture pursuant to the following statutory provisions:

(a)      19 U.S.C. § 1595a(c) provides that:
Merchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows:
(1) The merchandise shall be seized and forfeited if it—
     a.  is stolen, smuggled, or clandestinely imported or introduced […];

(b)      18 U.S.C. § 542, which makes it a crime to knowingly (1) enter or introduce, or attempt to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance, or (2) make any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the

---

[1] Pursuant to Local Rule 5.2-1, residential addresses have been omitted from this Complaint.

2

making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement

    (c)      18 U.S.C. § 545, which makes it a crime to:
…knowingly and willfully, with intent to defraud the United States, smuggle[ ], or clandestinely introduce[ ] or attempt[ ] to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or make[ ] out or pass[ ], or attempt[ ] to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or

…fraudulently or knowingly import[ ] or bring[ ] into the United States, any merchandise contrary to law, or receive [ ], conceal[ ], buy [ ], sell [ ], or in any manner facilitate[ ] the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law[…]

## EVIDENCE SUPPORTING FORFEITURE

### A.    Importation of Defendant Mosaic into the United States

9.    Since 2015, the FBI has been investigating Mohamad Yassin Alcharihi ("Alcharihi") regarding his involvement in smuggling looted items believed to be from a foreign conflict area into the United States.

10.    In adopting import restrictions on archaeological and ethnological material from Syria, the United States found that:

[f]or decades, the United States has shared the international concern for the need to protect endangered cultural property.  The appearance in the United States of stolen or illegally exported artifacts from other countries where there has been pillage has, on occasion, strained our foreign and cultural relations.  This situation, combined with the concerns of museum, archaeological, and scholarly communities, was recognized by the President and Congress.  It became apparent that it was in the national interest of the United States to join with other countries to suppress illegal trafficking of such objects in international commerce. [2]

---

[2]    F.R. Doc. 2016-19494, available at: https://www.federalregister.gov/documents/2016/08/15/2016-19491/import-restrictions-imposed-on-archaeological-and-ethnological-material-of-syria.

11.     In or about August 2015, Alcharihi hired a third party company based in California, Soo Hoo Customs Brokers Inc. ("Soo Hoo"), to process paperwork and import certain items, including the defendant mosaic, into the United States.  The shipment containing the defendant mosaic and other items arrived at the Port of Long Beach on or about August 13, 2015.  On the U.S. Customs and Border Protection ("CBP") Entry Summary Form 7501 that Soo Hoo submitted to CBP on behalf of Alcharihi, the description of the merchandise in the shipment was: 82 pieces of "Ornamental Art Oth. Materia[l]" with gross weight of 1450kg and assigned HTS 6913.90.500 valued at $1,808; and "Ceramic, Unglazed Tiles, Cub" with gross weight of 313kg and assigned HTC 6907.10.000, valued at $391.

12.     Law enforcement agents interviewed the owner of Soo Hoo regarding the shipment.  The company provided entry documents for the shipment and e-mail communications between Soo Hoo's employees and Alcharihi.  As a part of the process, Soo Hoo requested and received from Alcharihi information about the items to be imported, including the following:

a.     On or about August 10, 2015, Alcharihi provided Soo-Hoo a purported invoice for Alcharihi's purchase of approximately 81 vases and 3 mosaic items.  The invoice reflected that Alcharihi had purchased the items on or about "04.06.2015."  The invoice purported to be from Ahmet Bostanci ("Bostanci"), located in Defne-Hatay, in Turkey, and directed delivery to Alcharihi in the United States.  The total price on the invoice for all of the items was listed as $2,199.23, specifically:

i.     the vases at $7.83 each;

ii.    two mosaics at $587.00 each; and

iii.   one mosaic at $391.00.

b.     Alcharihi also provided Soo Hoo a shipping invoice from a third party company that reflected the total price paid to ship the items to the United States as $2,900.

///

13.     On or about August 12, 2015, based on the information provided by Alcharihi, Soo Hoo submitted the CBP Form 7501 Entry Summary to CBP.

14.     As discussed in greater detail below, the statements submitted on CBP Form 7501 Entry Summary were materially false because: (1) the form and various shipping documents misrepresented what was actually in the shipment; (2) the form and shipping documents did not provide the defendant mosaic's true country of origin; and (3) the items listed and the values of the items were under-reported. Instead, the shipment contained the defendant mosaic, which Alcharihi has admitted he did not truthfully report the value of or describe as an antiquity.  The defendant mosaic was illegally entered into the United States in violation of 18 U.S.C. §§ 542 and 545, rendering it subject to forfeiture pursuant to 19 U.S.C. § 1595a.

**B.      Identification and Seizure of Defendant Mosaic**

15.     In March 2016, law enforcement agents identified and interviewed two individuals who performed restoration work on the defendant mosaic at Alcharihi's residence in Palmdale, California.

16.     Witness 1 ("W-1") is an artist with training and work experience in mosaics, who has performed work for the New York City Metropolitan Transportation Authority, several United States airports and two United States embassies.

17.     W-1 was initially contacted by Alcharihi in approximately November 2015.  In January 2016, Alcharihi and W-1 finalized a proposal to restore what was described as a "Turkish Mosaic" with an estimated size of 15 x 7 feet.  The work was completed in or about March 2016.  W-1 was paid approximately $40,000 for his work.

18.     Alcharihi told W-1 that he (Alcharihi) bought the defendant mosaic along with another mosaic in Turkey, and that it was 2,000 years old.  Alcharihi further told W-1 that the mosaic was peeled off a floor 25 years ago and that it had taken him (Alcharihi) 10 years to get the mosaic out of Turkey because the laws had changed there.  Alcharihi told W-1 the mosaic had been rolled-up for 25 years.

///

19.     Witness 2 ("W-2") is a mosaic artist who has performed contract work with W-1 for approximately 13 years, restoring mosaics throughout the United States. W-1 hired W-2 to work on the defendant mosaic at Alcharihi's residence, where W-2 worked for approximately 20 days.  When asked about the mosaic, W-2 stated that it depicted images from Greek mythology and appeared to have been "peeled off of something, possibly a floor."  The mosaic was stored in Alcharihi's garage and Alcharihi told W-2 that the mosaic was found in Turkey, where it had been removed from a wall about 20 to 25 years before.

20.     In March 2016, agents consulted with an expert with advanced degrees, training, and experience in archeology, with specific research experience cataloging ancient mosaic floors in Syria ("Expert-1").

21.     Expert-1 reviewed photos that depicted portions of the mosaic that had previously been submitted to an auction house for sale by Alcharihi's Associate, further described in paragraph 34.  Based on his training and experience, Expert-1 opined that the style of the mosaic is similar to the style of the Roman Empire possibly from 3rd to 4th Century AD.  Expert-1 viewed the iconography of the mosaic in the photos and saw characters that were symbolic of Greek Mythology, likely from the Roman Period, and the mosaic appeared to have been restored.  Expert-1 indicated that one photo appeared to show the mosaic in the ground, but he was not sure.  Expert-1 stated that mosaics similar to the one in the photos were typically on the floor.

22.     Expert-1 further advised that since approximately 2012, there had been an increase in illegal excavations in Syria involving cultural property, and that looted Syrian archeological items were routinely routed through Turkey.

23.     Expert-1 reviewed photos of the mosaic taken in Alcharihi's garage that W-2 had provided to law enforcement.  Based on his training and experience, Expert-1 opined that the mosaic appeared to be genuine and, if so, was a "rare" piece that probably originated from northern or central Syria.

///

6

24.     On March 19, 2016, agents obtained a federal search and seizure warrant for Alcharihi's residence in Palmdale, California.  During the execution of the warrant, agents seized the defendant mosaic, which is approximately 18 feet in length, 8 feet in height (approximately 5.5 by 2.5 meters), and weighs approximately 2,000 pounds. Below is a photograph of the defendant mosaic taken by FBI after the seizure.



25.     In 2017, after the seizure took place, Expert-1 was able to examine the defendant mosaic in person and concluded that based on his training, education, and experience, the defendant mosaic was an authentic mosaic from the Byzantine Period depicting Roman mythology, and was consistent with the iconography of mosaics found in Syria, in particular in and around the city of Idlib, Syria.

26.     During the March 19, 2016 search of Alcharihi's house, agents found two Wells Fargo Bank outgoing wire transfer requests from Alcharihi (in California) to Ahmet Bostanci, in Turkey, dated October 19 and 20, 2015, respectively.  One was for $2,199.23, and the other was for $12,000.

27.     Agents also found a document titled "Legal Statement", dated March 5, 2016, that was signed by Witness-3 ("W-3") and notarized.  The document stated the following:

To whom it may concern.

I sold a rolled Mosaic carpet to Mr. Mohamad AlCharihi on November 1th [sic] 2009 in a yard sale.

The rolled mosaic carpet belonged to my late father since early 1970s

My father died in 1992, and my mother kept the rolled mosaic carpet since she did not want to give away any of my late father's belongings.

My mother died in October 24th 2009, so we sold the house furniture and the tools along with the mosaic rolled carpet in a yard sale on November 1st 2009

Mr. Mohamad AlCharihi, bought the 15'X7' mosaic rolled carpet which it was in a bad condition because of long time storing in my late father's garage.

28.     Law enforcement agents subsequently interviewed W-3, who stated that Alcharihi was a neighbor to whom she had sold a carpet approximately 5 years before. She said the carpet belonged to her father, who had died 6 years before, and she described it as small, light-weight carpet.  She stated she understood what a mosaic was, and the rug that she sold Alcharihi was not a mosaic item and was not heavy.  W-3 showed the agents throw rugs in her garage and said the throw rugs were similar to the rug she sold Alcharihi.

29.     W-3 further stated that approximately two to three weeks prior to talking to the agents, Alcharihi had asked W-3 if she would sign a letter for him that indicated that she had sold him the carpet.  W-3 thought his request was strange, especially after so much time had passed.  Alcharihi told her that he needed a letter showing that she sold him the carpet in case he had problems with it.  She asked Alcharihi if there was something wrong with what she had sold him and Alcharihi did not respond.  Alcharihi drafted a letter in English for W-3 to sign.  W-3 was unable to read the letter because she does not read English.  She believed the letter said that five years ago she sold a carpet to Alcharihi for less than $100 in cash.

8

C.   **Interview of Alcharihi**

30.   On March 19, 2016, agents interviewed Alcharihi at his residence.

a.   Alcharihi told the agents that he had worked as a technician and sales representative at Color Imaging Supply in Glendale, California since 2004.  When asked if the job paid well, Alcharihi stated "not really", and indicated that he also operated a car business by which he bought salvaged cars in the United States that were then exported to Togo, Africa.  Alcharihi said that he has a cousin in Africa whom he trusted to handle the car business there.  Alcharihi admitted, however, that he did not earn much from the car business, either.

b.   Alcharihi claimed that he also bought and restored mosaics for sale, but he had not yet sold anything.  He said that he had recently imported a container with fountains, vases and mosaics from Turkey that he intended to sell.  He had purchased a total of 80 waterfalls/vases for about $50-60 each, but many of them were broken when they arrived in the United States.  He referred to the mosaics as mosaic carpets that were located in Alcharihi's garage.

c.   Alcharihi said he bought the vases/waterfalls/fountains and mosaics from a friend, who bought these items from a broker in Turkey.  He described the individual as a well-known artist who also made his mosaics.  He said that the individual was Syrian and lives in Saudi Arabia, but traveled to Turkey.  Alcharihi described a conversation where he asked the individual what was good in Turkey, and the individual sent Alcharihi pictures of the fountains/vases/waterfalls. Alcharihi liked the vases and asked the individual to purchase those items for shipment to the United States.

d.   When asked about the mosaic carpets, Alcharihi stated that two of the mosaics were 8 feet by 15 feet, and the smaller one was 90 inches by 118 inches. He claimed to have paid $12,000 total for the mosaic and vases, and had a customs clearance and receipt for the items.  When asked how much the shipment was worth as reported on Customs entry documents, Alcharihi said "twenty four hundred or

something like that."  When asked why a lower number was reported instead of the $12,000 he had paid, Alcharihi indicated it was to lower the cost.  When asked it if was to pay less duties, Alcharihi stated yes.

e.     When asked where the old mosaic was from, Alcharihi replied "Turkey," but he did not know what part of Turkey.  When asked how he knew the old mosaic was from Turkey, Alcharihi stated that he bought it from Turkey and it was shipped from there.  When asked further how he knew the mosaic was from Turkey, Alcharihi eventually admitted "Well to be honest with you, I don't know."  When further asked by agents if anything was old, referring to the items he imported, Alcharihi admitted one of them was. When asked which one, Alcharihi replied, "The one why I restored it."  When asked how old, Alcharihi said, "It's about two thousand years."  When asked if he had told the customs broker how old it was, Alcharihi stated, "No."

**D.     Alcharihi's Email Communications Regarding the Defendant Mosaic**

31.     Law enforcement agents also obtained federal search warrants for email communications associated with several email accounts, including MIDAN2020@yahoo.com, an account known to be utilized by Alcharihi.

32.     On or about October 26, 2015, an email was sent from MIDAN2020@yahoo.com to a third party email address regarding the possible sale of the defendant mosaic.  The email stated:

> The mosaic piece was found in a destructed historical building in Ariha county in Idleb city, North western of Syria,[3]
>
> the destructed building a land around it is belong to me.  I inherited from my mother in 2005 which she inherited it from her father in 1995.
>
> my grandfather bought it in 1961.

---

[3]     Alcharihi is a Syrian National who became a naturalized U.S. citizen on or about February 5, 2010.

the picture was removed in 2010 by an expert mosaic specialist and transferred to Turkey for restoration after obtaining of a removal and transfer permit.

The mosaic picture is from the Hellenistic age. 4.5mX2.2m it believes has the greatest figures in the Hellenistic history.

Zeus, Hercules, and Aphrodite with her famous baby boy, with two other persons and a black bird. it believed that it telling a story of releasing Zeus from prison after he was captured in a war by his enemies.

in 2015 the picture was imported legally to the US.

33.     The below photograph of the defendant mosaic was also attached to the October 26, 2015 email, along with the message: "I gathered these pictures I took when the piece was on the ground, because I could not take a full picture because the big size."



*I gathered these pictures I took when the piece was on the ground, because I could not take a full picture because the big size.*

34.     On or about January 13, 2015, MIDAN2020@yahoo.com received an email from another individual with whom MIDAN2020@yahoo.com communicated with frequently via email (hereinafter "Associate").  Associate forwarded an email chain to MIDAN2020@yahoo.com, in which Associate sent pictures of the defendant mosaic to a third party and requested that the third party provide a price estimate.

11

Associate described the mosaic as having been found in the land of an old house and noted that it depicted prominent figures (Hercules and Zeus).  Associate asked the third party for a financial evaluation of the item and the third party responded that it would be approximately $100,000- $200,000 on the market.

35.     On or about March 5, 2015, Associate sent an email to a United Kingdom auction house that specializes in antiquities ("Auction House-1").  Associate described the mosaic as having been found in the land of an old house and noted that it depicted prominent figures (Hercules and Zeus).   In its communication with Associate, Auction House-1 asked "What is the provenance and where is it at the moment please?"  Associate responded that, "The source of the king of Syria, a special personal to me. I you removed the seriousness of the situation in Syria and is now the country of close to Syria and have official proof for shipment to any country in the world. I'll wait for you to initial evaluation of aesthetic hand and Tarakhittha Finance and its approximate value. If you find a good initial price I will be filed in the auction have."  Auction House-1 responded, "So long as you have documentation/proof that they left Syria before 2010, we might be able to accept these if they are legally shipped to the UK."  Associate responded, "Yes I have ownership documents of 2008. But at first look for an initial price in order to know the shipment destination. Wait for our initial offer."  Auction House-1 responded that the mosaic might be worth 40,000 to 60,000 British Pounds (per historical currency conversion approximately $60,972 to $91,458 in U.S. Dollars) but would need to be assessed after it was conserved and mounted.

### E.     Import Rules and Regulations

36.     19 U.S.C. §§ 1481 and 1484 require that when an item is imported into the United States, the importer must list a detailed description of the imported merchandise, the purchase price of each item within the shipment, the true value of the entire shipment and the value of each item of imported merchandise within the shipment.  The value of the shipment is a factor used to determine the duty to be assessed on the items. ///

37.     The importer must also list the true Country of Origin of the merchandise that is being imported into the United States, another factor in determining the duties to be assessed.  Country of Origin is also necessary to determine whether there are applicable U.S. sanctions in place.

38.     CBP typically looks at documents, invoices, packing lists and bank records (such as wire transfers) when assessing certain items and looking at issues such as valuation.  Importers involved in duty fraud often present false invoices or create double invoices.  Further, such importers often send multiple wire transfers to their suppliers so that the importer can create a false invoice for a lower amount that corresponds to the lowest wire transfer.  The documents with lower values are then falsely presented to Customs to clear the merchandise without paying the proper duties. This is consistent with Alcharihi sending two wires to Ahmet Bostanci in Turkey in October 2015.  Further, Alcharihi admitted to law enforcement agents that he paid Bostanci $12,000 total for the defendant mosaic and vases, but that he only reported "twenty four hundred or something like that" on the Customs entry documents to pay less duties.

39.     Plaintiff alleges that the defendant mosaic was illegally imported and entered into the United States in violation of United States law, with the intent to avoid lawful duties owed in connection with the importation.  Specifically, the defendant mosaic was part of the shipment described in paragraph 11 above, and was smuggled or clandestinely introduced through the knowing use of false and fraudulent documents or paper through a custom house, in violation of  18 U.S.C. §§ 542 and 545.  Further, following such illegal introduction, the defendant mosaic was concealed by Alcharihi at his residence in violation of 18 U.S.C. § 545.  As a result, the defendant mosaic is subject to forfeiture to the United States pursuant to 19 U.S.C. § 1595a(c)(1)(A).

///

WHEREFORE, plaintiff United States of America prays:

(a)     that due process issue to enforce the forfeiture of the defendant mosaic;

(b)     that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)     that this Court decree forfeiture of the defendant mosaic to the United States of America for disposition according to law; and

(d)     for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: May 23, 2018                    NICOLA T. HANNA
                                       United States Attorney
                                       LAWRENCE MIDDLETON
                                       Assistant United States Attorney
                                       Chief, Criminal Division
                                       STEVEN R. WELK
                                       Assistant United States Attorney
                                       Chief, Asset Forfeiture Section


                                       _____/s/_____
                                       KATHARINE SCHONBACHLER
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

## **VERIFICATION**

I, Elizabeth Rivas, hereby declare that:

1.      I am a special agent with the United States Federal Bureau of Investigation and am responsible for the forfeiture matter entitled United States of America v. One Ancient Mosaic.

2.      I have read the above Verified Complaint for Forfeiture and know its contents.  It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3.      Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed May 23, 2018 in Los Angeles, California.

ELIZABETH RIVAS