**JAMES S. LOCHEAD, ESQ.**
490 S. Fair Oaks Avenue
Pasadena, CA 91105
 Phone:      (626) 375-2295
 Email:      AggressiveDefense@hotmail.com

Attorney for
Mohamad Yassin Alcharihi

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br><br><br>MOHAMAD YASSIN ALCHARIHI<br><br>Applicant & Claimant,<br><br>vs.<br><br>ONE ANCIENT MOSAIC<br><br><br>Defendant, | CASE NO.:  **2:18-CV-04420-JFW-SS**<br><br>**HONORABLE JOHN F. WALTER COURTROOM**<br><br>**NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI TO UNSEAL DOCUMENTS HELD BY US GOVERNMENT REGARDING THE MATTER OF THE SEIZURE OF ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULES, CR MISC. NO. 16-00823-GW; MEMORANDUM OF POINTS & AUTHORITIES; DECLARATION OF MOHAMAD YASSIN IN SUPPORT**<br><br>Date:       November 25, 2019<br>Time:      1:30 PM<br>Courtroom:  Courtroom 7A;<br>               Hon. John F. Walker |

**NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI TO UNSEAL DOCUMENTS**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**: on November 25, 2019 at 1:30PM , or as soon thereafter as this matter may be heard in Courtroom 7A, of the above-entitle Court located at 350 W. 1st Street, Los Angeles, CA 90012 , Claimant Mohamad Yassin Alcharihi will move this Court for an Order To Unseal Documents Held By Us Government Regarding The Matter Of The Seizure Of One 2000-Year-Old Roman Era Mosaic Of Hercules, Cr Misc. No. 16-00823-Gw, hereby applies to this Court Ex Parte pursuant to Local Rule 79-5 and the rules of this Court, for an Order, unsealing documents in this matter.

This Motion is brought on the ground that the Claimant has both a common law and Constitutional right to the documents requested herein and good cause exists for this Order releasing the following categories of documents to the Claimant Mohamad Yassin Alcharihi:

1) From the UNITED STATES ATTORNEY'S OFFICE FOR THE CENTRAL DISTRICT OF CALIFORNIA, all information, documents, objects, and/or materials pertaining to any investigation (whether for asset forfeiture, criminal prosecution, or any other reason) of  MOHAMAD YASSIN ALCHARIHI  from 2010 until the present, including but not limited to formal or informal reports; information pertaining to or gathered through surveillance; search warrants, affidavits, and returns; internal notes and memoranda; inner-office directives; transcriptions and/or recordings of interviews; communications with other federal agencies or entities, state and federal law enforcement, and state and federal prosecutors; computer database entries or records, including any metadata about when certain data were entered, modified, deleted, or accessed.

2

2)   From the FEDERAL BUREAU OF INVESTIGATIONS, all information, documents, objects, and/or materials pertaining to any investigation (whether for asset forfeiture, criminal prosecution, or any other reason) of MOHAMAD YASSIN ALCHARIHI  from 2010 until the present, including but not limited to formal or informal reports; information pertaining to or gathered through surveillance; search warrants, affidavits, and returns; internal notes and memoranda; inner-office directives; transcriptions and/or recordings of interviews; communications with other federal agencies or entities, state and federal law enforcement, and state and federal prosecutors; computer database entries or records, including any metadata about when certain data were entered, modified, deleted, or accessed.

3)   From the US DEPARTMENT OF HOMELAND SECUIRTY, all information, documents, objects, and/or materials pertaining to any investigation (whether for asset forfeiture, criminal prosecution, or any other reason) of  MOHAMAD YASSIN ALCHARIHI  from 2010 until the present, including but not limited to formal or informal reports; information pertaining to or gathered through surveillance; search warrants, affidavits, and returns; internal notes and memoranda; inner-office directives; transcriptions and/or recordings of interviews; communications with other federal agencies or entities, state and federal law enforcement, and state and federal prosecutors; computer database entries or records, including any metadata about when certain data were entered, modified, deleted, or accessed.

NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI
TO UNSEAL DOCUMENTS

4)   From the UNITED STATES ATTORNEY'S OFFICE FOR THE CENTRAL DISTRICT OF CALIFORNIA, all information, documents, objects, and/or materials pertaining to any investigation (whether for asset forfeiture, criminal prosecution, or any other reason) regarding ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULES, from 2010 until the present, including but not limited to formal or informal reports; information pertaining to or gathered through surveillance; search warrants, affidavits, and returns; internal notes and memoranda; inner-office directives; transcriptions and/or recordings of interviews; communications with other federal agencies or entities, state and federal law enforcement, and state and federal prosecutors; computer database entries or records, including any metadata about when certain data were entered, modified, deleted, or accessed.

5)   From the FEDERAL BUREAU OF INVESTIGATIONS, all information, documents, objects, and/or materials pertaining to any investigation (whether for asset forfeiture, criminal prosecution, or any other reason) ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULES, from 2010 until the present, including but not limited to formal or informal reports; information pertaining to or gathered through surveillance; search warrants, affidavits, and returns; internal notes and memoranda; inner-office directives; transcriptions and/or recordings of interviews; communications with other federal agencies or entities, state and federal law enforcement, and state and federal prosecutors; computer database entries or records, including any metadata about when certain data were entered,

NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI
TO UNSEAL DOCUMENTS

1    modified, deleted, or accessed.

2    6)    From the US DEPARTMENT OF HOMELAND SECUIRTY,

3          all information, documents, objects, and/or materials pertaining

4          to any investigation (whether for asset forfeiture, criminal

5          prosecution, or any other reason) ONE 2000-YEAR-OLD

6          ROMAN ERA MOSAIC OF HERCULES, from 2010 until the

7          present, including but not limited to formal or informal reports;

8          information pertaining to or gathered through surveillance;

9          search warrants, affidavits, and returns; internal notes and

10         memoranda; inner-office directives; transcriptions and/or

11         recordings of interviews; communications with other federal

12         agencies or entities, state and federal law enforcement, and state

13         and federal prosecutors; computer database entries or records,

14         including any metadata about when certain data were entered,

15         modified, deleted, or accessed.

16   7)    From the Internal Revenue Service, all information, documents,

17         objects, and/or materials pertaining to any investigation

18         (whether for asset forfeiture, criminal prosecution, or any other

19         reason) of MOHAMAD YASSIN ALCHARIHI from 2010

20         until the present, including but not limited to formal or informal

21         reports; information pertaining to or gathered through

22         surveillance; search warrants, affidavits, and returns; internal

23         notes and memoranda; inner-office directives; transcriptions

24         and/or recordings of interviews; communications with other

25         federal agencies or entities, state and federal law enforcement,

26         and state and federal prosecutors; computer database entries or

27         records, including any metadata about when specific data were

28         entered, modified, deleted, or accessed.

5

**NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI
TO UNSEAL DOCUMENTS**

8) From the Internal Revenue Service, all information, documents, objects, and/or materials pertaining to any investigation (whether for asset forfeiture, criminal prosecution, or any other reason) of ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULES, from 2010 to the present, including but not limited to formal or informal reports; information pertaining to or gathered through surveillance; search warrants, affidavits, and returns; internal notes and memoranda; inner-office directives; transcriptions and/or recordings of interviews; communications with other federal agencies or entities, state and federal law enforcement, and state and federal prosecutors; computer database entries or records, including any metadata about when specific data were entered, modified, deleted, or accessed.

9) Any and all evidence or information pertaining to meetings and/or communications about MOHAMAD YASSIN ALCHARIHI between state law enforcement and federal law enforcement for *any* purpose, from 2010 until the present, including communications pertaining to asset forfeiture and criminal investigation - in particular, defendants seek all evidence and information pertaining to the state "hand off" of the case to one or more federal agencies.

10) Any and all evidence or information pertaining to meetings and/or communications about ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULES, between state law enforcement and federal law enforcement for *any* purpose, from 2010 until the present, including communications pertaining to asset forfeiture and criminal investigation - in particular,

6

defendants seek all evidence and information pertaining to the state "hand off" of the case to one or more federal agencies.

11)   Any and all evidence or information regarding government surveillance operations that occurred during and between 2010 and the present by federal law enforcement (or its agents) regarding MOHAMAD YASSIN ALCHARIHI.

12)   Any and all evidence or information regarding government surveillance operations that occurred between 2010 and the present by federal law enforcement (or its agents) regarding ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULES.

13)   An order compelling the government to complete its disclosures by a certain date, to indicate which disclosures are responsive to which requests, to provide a list of items that have been requested but whose disclosure is refused, and prohibiting withholding of discovery or other materials to which the defense is entitled.

14)   Any and all evidence or information, including all information subject to disclosure under Rule 16 in the possession, custody, or control of the government, or the existence of which is known, or by the exercise of due diligence could become known to the government, which evidence or information the government presently or at any time contemplates or considers using in its evidence at trial, in order to afford the Defendant an opportunity to move for suppression.

15)   In addition to such other evidence as may be subject to F.R.Cr.P. Rule 12(b)(4), notice of the following specific evidence of information is requested pursuant to F.R.Cr.P. Rule

**NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI TO UNSEAL DOCUMENTS**

12(b)(4):

    a.    Evidence that was obtained through the illegal March 19, 2016 seizure, *or that relates to or was derived from* the March 19, 2016 search or seizure.

    b.    Evidence that was obtained through any warrantless search or seizure, or that relates to or was derived from any such search or seizure regarding MOHAMAD YASSIN ALCHARIHI;

    c.    Evidence that was obtained through any warrantless search or seizure, or that relates to or was derived from any such search or seizure regarding ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULES;

    d.    Evidence that was obtained through the execution of any search or seizure warrant, or that relates to or was derived from any such warrant regarding MOHAMAD YASSIN ALCHARIHI;

    e.    Evidence that was obtained through the execution of any search or seizure warrant, or that relates to or was derived from any such warrant regarding ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULES;

    f.    Evidence that was obtained through any electronic or mechanical surveillance or tape recordings, or that relates to or was derived from any such surveillance or recordings regarding MOHAMAD YASSIN ALCHARIH;

8

g.   Evidence that was obtained through any electronic or mechanical surveillance or tape recordings, or that relates to or was derived from any such surveillance or recordings regarding ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULES;

h.   Evidence that was obtained through any use of a mail cover, or that relates to or was derived from any such mail cover regarding MOHAMAD YASSIN ALCHARIH;

i.   Evidence that was obtained through any use of a mail cover, or that relates to or was derived from any such mail cover regarding ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULE;

j.   Any evidence relating to the exhibition or display of the defendant's photograph, likeness, image, or voice recording to anyone, not then employed by a law enforcement agency regarding MOHAMAD YASSIN ALCHARIH;

k.   Any evidence relating to the exhibition or display of the defendant's photograph, likeness, image, or voice recording to anyone, not then employed by a law enforcement agency regarding ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULE;

l.   Any written, recorded, or oral statements of MOHAMAD YASSIN ALCHARIH, or any other written, recorded, or oral statements by others intended to be offered as a statement of the MOHAMAD YASSIN ALCHARIH;

9

m.     (Due to the enormous volume of discovery in this case) Any
evidence or information that falls within Rule 12(b)(4) (*see* ¶8) to
*be specifically identified from among the items of other discovery*
that has been or will be produced pursuant to Rule 16.

This motion is made following meet and confer communications, pursuant to Local Rule 7-3, with counsel for Defendants on October 17, 2019.

This Motion is based upon this notice of hearing, the Memorandum of Points and Authorities supporting said Motion, the Declaration of Mohamad Yassin Alcharihi and on all pleadings, papers, and records in the Superior Court Clerk's file; and any reply or supplemental memorandum or requests for judicial notice which may be hereafter filed in support of this motion, and upon oral argument presented at the time of hearing.

Dated:  October 17, 2019          Respectfully,

**JAMES S. LOCHEAD**
Attorney for Mohamad Alcharihi Yassin

NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI
TO UNSEAL DOCUMENTS

## MEMORANDUM OF POINTS AND AUTHORITIES

To obtain *ex parte* relief, Applicant MOHAMAD YASSIN ALCHARIHI must show that he will be irreparably prejudiced if this Application is heard according to regular noticed motion procedures, and that he "is without fault in creating the crisis that requires *ex parte* relief." (*Mission Power Engineering Co. v. Continental Cas. Co.,* 883 F. Supp. 488, 492 (C.D. Cal. 1995).)

The US Government, had sought to keep the property of the Applicant and Claimant MOHAMAD YASSIN ALCHARIHI, without due process, in failing to timely file its Complaint against the Petitioner pursuant to 18 U.S.C. § 981(a)(1)(A) and (C). Despite numerous continuance, the US Government failed to file its Complaint.  On April 1, 2018, the Honorable George H. Wu – U.S. District Court Judge, granted Applicant and Claimant MOHAMAD YASSIN ALCHARIHI's Motion Opposing any Further Extensions by the U.S. Government in this matter.

Under civil forfeiture statutes, the government can only lawfully forfeit property if the government *specifically* traces the property to unlawful activity. The government may not rely on general or conclusory allegations of traceability.   Here, as evidenced by the Government's continued delays, it has manifestly failed to uncover any actual tracing of the proceeds of unlawful activity to the property seized from Petitioner and Claimant.

Also at the time, the Honorable George H. Wu entertained the Request of Applicant and Claimant MOHAMAD YASSIN ALCHARIHI to have the records unsealed relating to The Matter of The Seizure of One 2000-Year-Old Roman Era Mosaic of Hercules, CR MISC. NO. 16-00823-GW.

## I.    SUMMARY OF FACTS

Applicant/Claimant, MOHAMAD YASSIN ALCHARIHI (hereinafter referred to as "ALCHARIHI"), is a resident of Palmdale, California.  ALCHARIHI is the sole individual owner of all the seized property described in detail herein which is the

**NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI TO UNSEAL DOCUMENTS**

subject of this complaint, including but not limited to a Greek Mosaic, known as the 11th Trial of Hercules, which he imported as trash and restored to value spending over $40,000 for the technique of restoration and preservation. Petitioner wants his property returned released and returned to him as the proper and sole owner of all property described in the Search and Seizure Warrant, at issue herein. (Declaration of Mohamad Yassin Alcharihi (hereinafter referred to as "Alcharihi Decl.") ¶ 3., Exhibit A.)

On March 19, 2016, Special Agents of the FBI and Department of Homeland Security, Homeland Security Investigations ("HSI") executed Search and Seizure Warrant No. 16-0589M, signed by the Honorable Jacqueline Choolijian, United States Magistrate Judge, for the search the residence of Petitioner MOHAMAD YASSIN ALCHARIHI (hereinafter referred to as "ALCHARIHI") in Palmdale, California. The search warrant directed agents to seize items constituting evidence, contraband, fruits, and/or instrumentalities of violations of 18 U.S.C. § 542 (entry of goods into the United States by means of false statements), and 18 U.S.C. § 545 (smuggling goods into the United States), including but not limited to: looted and/or stolen antiquities appearing to originate from Syria and/or Turkey, including mosaics and records related to antiquities. (Alcharihi Decl. ¶ 4, Exhibit A.)

Pursuant to the search warrant, agents seized items that agents believed constituted evidence, contraband, fruits, and/or instrumentalities of the listed offenses, including the "2000-year-old era mosaic of Hercules" (the "Mosaic"), with FBI identification number 3410160067, that is the subject of Petitioner's Petition. When the item was imported to the United States, it was in poor condition and in need of restoration. ALCHARIHI restored the Mosaic. (Alcharihi Decl. ¶ 5, Exhibit A.)

The Greek Mosaic is the most valuable item in the list of property seized and sought to be returned to the Petitioner. It is the only item for which the FBI gave an identification number as indicated in the Summary. The Mosaic, popularly described in the antiquities industry as "The Eleventh Labor of Hercules" is a famous Mosaic in the

**NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI TO UNSEAL DOCUMENTS**

history of Greek mythology. It was damaged and in no condition to be displayed or shown to viewers as an item in a museum or other display venue. (Alcharihi Decl. ¶ 6.)

Petitioner paid for the importation of the Mosaic and all the other items on the list. Some items, however, were computers and records which were not related to importation of the Mosaic, but they were still seized by the government. Unfortunately, this action has destroyed Petitioner's business of restoring items and conserving items which he legally acquires.  (Alcharihi Decl. ¶ 7.)

ALCHARIHI filed all necessary claims of ownership and release of all properties. (Alcharihi Decl. ¶ 8.)

On, May 20, 2016, counsel for the Petitioner forwarded a Legal Memorandum to the FBI showing in detail based on the facts and the case law that they had made a mistake and that Islamophobia and racism was the only basis for the search and seizure by the FBI. The Legal Memorandum requested return of all the seized property. (Alcharihi Decl. ¶ 9, Exhibit B.)

The FBI denied ALCHARIHI's claim of ownership and for release, and on May 17, 2016, the FBI initiated administrative forfeiture proceedings against the Mosaic by sending Petitioner a notice of the seizure. (Alcharihi Decl. ¶ 10.)

In response, Petitioner submitted a claim to the FBI contesting the administrative forfeiture of the Mosaic. On the second page of his administrative claim, Petitioner identified the Mosaic as a "Turkish Mosaic." (Alcharihi Decl. ¶ 11.)

In response to the FBI's proceedings, ALCHARIHI provided a document marked as Exhibit A to the administrative claim, an invoice for the purchase of the Mosaic. The invoice was written in Turkish and English and listed the business that sold the Mosaic to ALCHARIHI as "Ahmet Bostanci" with an address in a province in Turkey. The invoice included a statement: "We Hereby declare and Certify that the contents covered by this receipt are all Turkish origin and has nothing to do whit [*sic*] Israel what so ever."  (Alcharihi Decl. ¶ 12.)

Additionally, ALCHARIHI submitted a copy of a Certificate of Origin to the

Administrative Claim, reflecting Turkey as the country of origin of the Mosaic. (Alcharihi Decl. ¶ 13.)

As a result of Defendants unlawful seizure and retention of his property, ALCHARIHI, has, and continues to incur, substantial hardship due to the government's seizure of the subject Mosaic and other property and its failure to initiate formal forfeiture proceedings or take action on Petitioner's request for return of the Mosaic and other subject property. (Alcharihi Decl. ¶ 14.)

In particular, ALCHARIHI needs to perform further restoration on the Mosaic and the FBI is unskilled, inexperienced and abysmally careless when it comes to preserving antiquities such as the Mosaic, other antiquities and properties, including but not limited to statues, and antiquities that need restoration and conversation. This seizure in addition is causing a loss of goodwill and the risk of permanently losing the interest of potential buyers of the Mosaic and other properties, and continuing infringement of his First Amendment rights. (Alcharihi Decl. ¶ 15.)

## III.   LEGAL ANALYSIS

### A.   A COMMONLAW RIGHT TO DOCUMENTS

The United States Supreme Court has recognized a federal common law "right to inspect and copy public records and documents, including judicial records and documents." (*Nixon vs. Warner Comms, Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978) (citations omitted).) "Unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point" for the public access analysis. (*Kamakana vs. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal quotation omitted) (quoting *Foltz vs. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).)

A party seeking to seal - or keep sealed - a judicial record "bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." (*Kamakana*, 447 F.3d at 1178 (citation omitted).) The "'compelling reasons'

standard applies to most judicial records." (*Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 677-78 (9th Cir. 2010) (citation omitted).)

The United States Supreme Court has held that the First Amendment guarantees the press and the public the right to attend trials and pre-trial proceedings. (*Richmond Newspapers, Inc. vs. Virginia,* 448 U.S. 555, 580 (1980); *Globe Newspaper Co. vs. Superior Court,* 457 U.S. 596 (1982); *Press-Enterprise Co. vs. Superior Court,* 464 U.S. 501 (1984); *Press-Enterprise Co. v. Superior Court,* 478 U.S. 1, 10 (1986).)  This First Amendment guarantee applies to judicial records as well as proceedings. (*Foltz, supra,* 331 F.3d at 1135; *Kamakana,*)

Judicial records encompass only those documents that have been incorporated into the court's adjudicatory proceedings. (*United States v. Wecht*, 484 F.3d 194, 208 (3d Cir. 2007) (whether a document is a judicial record "'depends on whether [the] document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings'"). Materials filed with a court are thus not automatically deemed judicial documents subject to public access; before a filed document will be deemed part of the judicial record, it "must be relevant to the performance of the judicial function and useful in the judicial process." (*United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995); *see also United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997) (finding that plea agreement filed with court was not a judicial record, holding that "what makes a document a judicial record and subjects it to the common law right of access is the role it plays in the adjudicatory process").)

In *Kamakana*, the Ninth Circuit recognized a "compelling reasons" standard for the sealing of materials submitted in connection with dispositive motions. (*Kamakana*, 447 F.3d at 1179.) At the same time, however, the Ninth Circuit distinguished materials submitted in connection with non‑dispositive motions, to which the "compelling reasons" standard does not apply. (*Kamakana.*) As the Ninth Circuit put it, "[t]he public policies that support the right of access to dispositive motions, and

**NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI
TO UNSEAL DOCUMENTS**

related materials, do not apply with equal force to non-dispositive materials." (*Kamakana* (citing *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002)). The higher standard applies to dispositive motions because "the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events." (*Kamakana*.). On the other hand, "the public has less of a need for access to court records attached only to non-dispositive motions because those documents are often "'unrelated, or only tangentially related, to the underlying cause of action." (*Kamakana*.) Only when the sealed materials are attached to a dispositive motion do they become subject to the "compelling reasons" standard. ((*Kamakana*; *see also Foltz vs. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135-36 (9th Cir. 2003) (drawing same distinction between treatment of dispositive and non-dispositive motions).

An issue raised by the US Government in their numerous requests for extensions, was that their investigations were incomplete.  Now that it has been determined that they would not be afforded any further time within which to file their Complaint, it must be presumed, that their investigation, is now complete.  This raises the determination as to whether the common law right of access applies to warrant materials after an investigation has ended.  It has been held that the common law right of access does not apply to warrant materials "***during*** the pre-indictment stage of an ongoing criminal investigation." (*Times Mirror Co. v. United States,* 873 F.2d 1210, 1219, 1221 (9th Cir.1989).)   The Courts have expressly reserved whether the common law right of access applies to warrant materials after "an investigation has been terminated." (*Times Mirror.*)

It has been held, that the common law right to documents relating to a warrant, exists under common law right of access principles.  (*In re EyeCare Physicians of Am.,* 100 F.3d 514, 517 (7th Cir.1996); *In re Newsday, Inc.,* 895 F.2d 74, 79 (2d Cir.1990); *Baltimore Sun Co. v. Goetz,* 886 F.2d 60, 62 (4th Cir.1989); *United States v.*

**NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI TO UNSEAL DOCUMENTS**

*Wells Fargo Bank Account Number 7986104185,* 643 F.Supp.2d 577, 583–84 (S.D.N.Y.2009); *In re N.Y. Times Co.,* 585 F.Supp.2d 83, 92 (D.D.C.2008); *Commonwealth v. Fenstermaker,* 515 Pa. 501, 530 A.2d 414, 417–19 (1987); *In re Search Warrant for Secretarial Area Outside Office of Gunn,* 855 F.2d 569, 575–76 (8th Cir.1988) (Bowman, J., concurring).

Succinctly, warrant materials are "judicial records and documents" for the purposes of disclosure. "Affidavits in support of seizure or search warrants are central to a court's probable cause determination." (*Wells Fargo,* 643 F.Supp.2d at 583.) As such, they "clearly fall within the definition of 'judicial documents.'" *(Wells Fargo,* 643 F.Supp.2d; *Fenstermaker,* 530 A.2d at 418 ("[D]ocuments upon which a magistrate bases a decision to issue a warrant are clearly judicial in character.").

## B. CONSTITUTIONAL RIGHT TO DOCUMENTS RELATING TO SEARCH & SEIZURE WARRANTS

In this instance, if can be argued by the US Government's continued requests for continuances and its failure to timely file the requisite Complaint, it could be easily deduced, that the seizure of ALCHARIHI's property was in direct violation of the 4th Amendment to the US Constitution – which prohibits unreasonable searches and seizures, and requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." (U.S. Const. amend. IV.) "A search warrant that is not issued 'upon probable cause' is invalid." (*Millender v. County of Los Angeles,* 620 F.3d 1016 (9th Cir. 2010) (en banc), quoting U.S. Const. amend. IV. "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Millender* (internal quotation marks omitted).)

"To be valid, a search warrant must also particularly describe the things to be seized." (*Millender* (internal quotation marks and brackets omitted).) Therefore, the

17

NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI
TO UNSEAL DOCUMENTS

Fourth Amendment imposes a requirement of "specificity," which has two aspects: (1) particularity, and (2) breadth. (*Millender*.) "Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." (*Millender*, quoting *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009).) The determination whether a warrant satisfies these requirements turns on three factors: (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued. (*Millender*, quoting *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).

## C.   THE GOVERNMENT'S AFFIRMATIVE DUTY TO DISCLOSURE EVIDENCE

The US Government has an "affirmative duty to disclose evidence favorable to a defendant can trace its origins to early 20th-century strictures against misrepresentation and is of course most prominently associated with... *Brady v. Maryland*, 373 U.S. 83, 87 (1963)." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995). In *Brady*, the Supreme Court held "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." (*Brady*, 373 U.S. at 87.)

1.   Documents being Requested:

In this regarding, ALCHARIHI requests the following documents:

1)   From the UNITED STATES ATTORNEY'S OFFICE FOR THE CENTRAL DISTRICT OF CALIFORNIA, all information, documents,

18

objects, and/or materials pertaining to any investigation (whether for asset forfeiture, criminal prosecution, or any other reason) of  MOHAMAD YASSIN ALCHARIHI  from 2010 until the present, including but not limited to formal or informal reports; information pertaining to or gathered through surveillance; search warrants, affidavits, and returns; internal notes and memoranda; inner-office directives; transcriptions and/or recordings of interviews; communications with other federal agencies or entities, state and federal law enforcement, and state and federal prosecutors; computer database entries or records, including any metadata about when certain data were entered, modified, deleted, or accessed.

2)   From the FEDERAL BUREAU OF INVESTIGATIONS, all information, documents, objects, and/or materials pertaining to any investigation (whether for asset forfeiture, criminal prosecution, or any other reason) of MOHAMAD YASSIN ALCHARIHI  from 2010 until the present, including but not limited to formal or informal reports; information pertaining to or gathered through surveillance; search warrants, affidavits, and returns; internal notes and memoranda; inner-office directives; transcriptions and/or recordings of interviews; communications with other federal agencies or entities, state and

**NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI TO UNSEAL DOCUMENTS**

1  federal law enforcement, and state and federal
2  prosecutors; computer database entries or records,
3  including any metadata about when certain data
4  were entered, modified, deleted, or accessed.
5  3)  From the US DEPARTMENT OF HOMELAND
6  SECUIRTY, all information, documents, objects,
7  and/or materials pertaining to any investigation
8  (whether for asset forfeiture, criminal prosecution,
9  or any other reason) of  MOHAMAD YASSIN
10  ALCHARIHI  from 2010 until the present,
11  including but not limited to formal or informal
12  reports; information pertaining to or gathered
13  through surveillance; search warrants, affidavits,
14  and returns; internal notes and memoranda; inner-
15  office directives; transcriptions and/or recordings
16  of interviews; communications with other federal
17  agencies or entities, state and federal law
18  enforcement, and state and federal prosecutors;
19  computer database entries or records, including
20  any metadata about when certain data were
21  entered, modified, deleted, or accessed.
22  4)   From the UNITED STATES ATTORNEY'S
23  OFFICE FOR THE CENTRAL DISTRICT OF
24  CALIFORNIA, all information, documents,
25  objects, and/or materials pertaining to any
26  investigation (whether for asset forfeiture, criminal
27  prosecution, or any other reason) regarding ONE
28  2000-YEAR-OLD ROMAN ERA MOSAIC OF

NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI
TO UNSEAL DOCUMENTS

1    HERCULES, from 2010 until the present,
2    including but not limited to formal or informal
3    reports; information pertaining to or gathered
4    through surveillance; search warrants, affidavits,
5    and returns; internal notes and memoranda; inner-
6    office directives; transcriptions and/or recordings
7    of interviews; communications with other federal
8    agencies or entities, state and federal law
9    enforcement, and state and federal prosecutors;
10   computer database entries or records, including
11   any metadata about when certain data were
12   entered, modified, deleted, or accessed.
13   5)   From the FEDERAL BUREAU OF
14   INVESTIGATIONS, all information, documents,
15   objects, and/or materials pertaining to any
16   investigation (whether for asset forfeiture, criminal
17   prosecution, or any other reason) ONE 2000-
18   YEAR-OLD ROMAN ERA MOSAIC OF
19   HERCULES, from 2010 until the present,
20   including but not limited to formal or informal
21   reports; information pertaining to or gathered
22   through surveillance; search warrants, affidavits,
23   and returns; internal notes and memoranda; inner-
24   office directives; transcriptions and/or recordings
25   of interviews; communications with other federal
26   agencies or entities, state and federal law
27   enforcement, and state and federal prosecutors;
28   computer database entries or records, including

NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI
TO UNSEAL DOCUMENTS

any metadata about when certain data were
entered, modified, deleted, or accessed.

6)    From the US DEPARTMENT OF HOMELAND
SECUIRTY, all information, documents, objects,
and/or materials pertaining to any investigation
(whether for asset forfeiture, criminal prosecution,
or any other reason) ONE 2000-YEAR-OLD
ROMAN ERA MOSAIC OF HERCULES, from
2010 until the present, including but not limited to
formal or informal reports; information pertaining
to or gathered through surveillance; search
warrants, affidavits, and returns; internal notes and
memoranda; inner-office directives; transcriptions
and/or recordings of interviews; communications
with other federal agencies or entities, state and
federal law enforcement, and state and federal
prosecutors; computer database entries or records,
including any metadata about when certain data
were entered, modified, deleted, or accessed.

7)    From the Internal Revenue Service, all
information, documents, objects, and/or materials
pertaining to any investigation (whether for asset
forfeiture, criminal prosecution, or any other
reason) of MOHAMAD YASSIN ALCHARIHI
from 2010 until the present, including but not
limited to formal or informal reports; information
pertaining to or gathered through surveillance;
search warrants, affidavits, and returns; internal

**NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI
TO UNSEAL DOCUMENTS**

notes and memoranda; inner-office directives; transcriptions and/or recordings of interviews; communications with other federal agencies or entities, state and federal law enforcement, and state and federal prosecutors; computer database entries or records, including any metadata about when specific data were entered, modified, deleted, or accessed.

8) From the Internal Revenue Service, all information, documents, objects, and/or materials pertaining to any investigation (whether for asset forfeiture, criminal prosecution, or any other reason) of ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULES, from 2010 to the present, including but not limited to formal or informal reports; information pertaining to or gathered through surveillance; search warrants, affidavits, and returns; internal notes and memoranda; inner-office directives; transcriptions and/or recordings of interviews; communications with other federal agencies or entities, state and federal law enforcement, and state and federal prosecutors; computer database entries or records, including any metadata about when specific data were entered, modified, deleted, or accessed.

9) Any and all evidence or information pertaining to meetings and/or communications about MOHAMAD YASSIN ALCHARIHI between

23

state law enforcement and federal law enforcement for *any* purpose, from 2010 until the present, including communications pertaining to asset forfeiture and criminal investigation - in particular, defendants seek all evidence and information pertaining to the state "hand off" of the case to one or more federal agencies.

10) Any and all evidence or information pertaining to meetings and/or communications about ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULES, between state law enforcement and federal law enforcement for *any* purpose, from 2010 until the present, including communications pertaining to asset forfeiture and criminal investigation - in particular, defendants seek all evidence and information pertaining to the state "hand off" of the case to one or more federal agencies.

11) Any and all evidence or information regarding government surveillance operations that occurred during and between 2010 and the present by federal law enforcement (or its agents) regarding MOHAMAD YASSIN ALCHARIHI.

12) Any and all evidence or information regarding government surveillance operations that occurred between 2010 and the present by federal law enforcement (or its agents) regarding ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF

24

**NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI TO UNSEAL DOCUMENTS**

HERCULES.

13) An order compelling the government to complete its disclosures by a certain date, to indicate which disclosures are responsive to which requests, to provide a list of items that have been requested but whose disclosure is refused, and prohibiting withholding of discovery or other materials to which the defense is entitled.

14) Any and all evidence or information, including all information subject to disclosure under Rule 16 in the possession, custody, or control of the government, or the existence of which is known, or by the exercise of due diligence could become known to the government, which evidence or information the government presently or at any time contemplates or considers using in its evidence at trial, in order to afford the Defendant an opportunity to move for suppression.

15) In addition to such other evidence as may be subject to F.R.Cr.P. Rule 12(b)(4), notice of the following specific evidence of information is requested pursuant to F.R.Cr.P. Rule 12(b)(4):

a. Evidence that was obtained through the illegal March 19, 2016 seizure, *or that relates to or was derived from* the March 19, 2016 search or seizure.

b. Evidence that was obtained through any warrantless

**NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI
TO UNSEAL DOCUMENTS**

search or seizure, or that relates to or was derived from any such search or seizure regarding MOHAMAD YASSIN ALCHARIHI;

c.      Evidence that was obtained through any warrantless search or seizure, or that relates to or was derived from any such search or seizure regarding ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULES;

d.      Evidence that was obtained through the execution of any search or seizure warrant, or that relates to or was derived from any such warrant regarding MOHAMAD YASSIN ALCHARIHI;

e.      Evidence that was obtained through the execution of any search or seizure warrant, or that relates to or was derived from any such warrant regarding ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULES;

f.      Evidence that was obtained through any electronic or mechanical surveillance or tape recordings, or that relates to or was derived from any such surveillance or recordings regarding MOHAMAD YASSIN ALCHARIH;

g.      Evidence that was obtained through any electronic or

**NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI TO UNSEAL DOCUMENTS**

mechanical surveillance or tape recordings, or that relates to or was derived from any such surveillance or recordings regarding ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULES;

h.   Evidence that was obtained through any use of a mail cover, or that relates to or was derived from any such mail cover regarding MOHAMAD YASSIN ALCHARIH;

i.   Evidence that was obtained through any use of a mail cover, or that relates to or was derived from any such mail cover regarding ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULE;

j.   Any evidence relating to the exhibition or display of the defendant's photograph, likeness, image, or voice recording to anyone, not then employed by a law enforcement agency regarding MOHAMAD YASSIN ALCHARIH;

k.   Any evidence relating to the exhibition or display of the defendant's photograph, likeness, image, or voice recording to anyone, not then employed by a law enforcement agency regarding ONE 2000-YEAR-OLD ROMAN ERA MOSAIC OF HERCULE;

l.   Any written, recorded, or oral statements of MOHAMAD YASSIN ALCHARIH, or any other

1    written, recorded, or oral statements by others intended

2    to be offered as a statement of the MOHAMAD

3    YASSIN ALCHARIH;

4

5    m.    (Due to the enormous volume of discovery in this

6    case) Any evidence or information that falls within

7    Rule 12(b)(4) (*see* ¶8) to *be specifically identified from*

8    *among the items of other discovery* that has been or

9    will be produced pursuant to Rule 16.

10

11   **IV.    CONCLUSION**

12       A compelling reason exists for the release of the documents as requested.

13

14       Dated:  October 17, 2019          Respectfully,

15

16

17

18

19       _____

20       **JAMES S. LOCHEAD**

21       Attorney for Plaintiff, Mohammad Yassin Alcarihi

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION OF MOHAMAD YASSIN ALCHARIHI
TO UNSEAL DOCUMENTS**